**Opinion issued December 16, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-13-00901-CR**

**NO. 01-13-00902-CR**

**NO. 01-13-00903-CR**

———————————

**IGNACIO MARTIN GONZALEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1377914, 1377915, 1377916**

---

# OPINION

A jury convicted Ignacio Martin Gonzalez of three counts of aggravated sexual assault of a child younger than age 14.[1] In three issues, Gonzalez asks this Court to reverse his conviction and remand the case for new trial. First, Gonzalez asserts that the trial court erred by admitting the complainant's medical records. Second, he argues that, to the extent his attorney failed to preserve the first issue for appeal, he was denied effective assistance of counsel. Third, he contends that the trial court erred by denying his motion for a mistrial after an improper impeachment. We affirm.

## Background

Gonzalez had an ongoing relationship with the mother of the complainant, B.R., a seven-year-old boy.[2] Eventually, Gonzalez moved into an apartment with B.R. and B.R.'s mother. Subsequently, B.R.'s mother noticed strange changes in B.R.'s behavior. One day, B.R.'s mother stepped out of the shower to discover Gonzalez next to B.R. Gonzalez's pants were unzipped; B.R.'s mouth was red and covered in saliva; both appeared startled. B.R.'s mother accused Gonzalez of sexually assaulting B.R.

Several medical personnel treated B.R., including Dr. William Schmidt, a psychotherapist. B.R. told Dr. Schmidt that Gonzalez had abused him. During the

---

[1]  TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (2)(B) (West Supp. 2014).
[2]  To protect the complainant's identity, he will be referred to as B.R.

course of his therapy, B.R. also discussed an encounter with two mating dogs that reminded him of Gonzalez. Dr. Schmidt diagnosed B.R. with Post-Traumatic Stress Disorder ("PTSD").

The State charged Gonzalez with three counts of aggravated sexual assault of a child.[3] During trial, B.R. testified that Gonzalez sexually assaulted him. His mother testified about B.R.'s changes in behavior and her discovery of the abuse. An emergency-room nurse testified that she examined B.R. and that B.R. told her about the sexual assault. The State offered the emergency-room medical records (with inadmissible hearsay redacted) into evidence; Gonzalez did not object to those records as tendered. Subsequently, the State called a sexual-abuse investigator, who testified that B.R. also told her about the assaults.

Finally, the State announced that it intended to call Dr. Schmidt as a witness and introduce his records of B.R.'s treatment. Pursuant to an agreement between the parties, the State redacted certain inadmissible portions of the records. Before Dr. Schmidt took the stand, and outside the presence of the jury, Gonzalez objected to the admission of Dr. Schmidt's redacted records. He argued that they were highly prejudicial or that, in the alternative, the portion related to the dogs was

---

[3]     Gonzalez was initially charged with one count of aggravated assault of a child. The jury could not reach a unanimous verdict, and the trial court declared a mistrial. Subsequently, Gonzalez was charged with three counts of aggravated assault of a child. This appeal is from the second trial.

highly prejudicial and thus inadmissible. The trial court denied the objection. Counsel re-urged the objection when the State offered the records; the trial court again overruled the objection and admitted the records.

During Gonzalez's case-in-chief, he called his son to be a character witness. On cross-examination, the State asked his son about three prior marijuana convictions. The trial court sustained an improper-impeachment objection and instructed the jury to disregard. At Gonzalez's request, the court gave the jury a second, sterner instruction to disregard the improper impeachment. Gonzalez then moved for a mistrial. The trial court denied the motion.

The jury convicted Gonzalez on all three counts. Gonzalez timely appealed.

## Admissibility of B.R.'s Medical Records

In his first issue, Gonzalez challenges the trial court's decision to admit the records of Dr. Schmidt, a testifying expert, related to B.R.'s treatment for PTSD. Gonzalez objected that the entire set of records were irrelevant or created a danger of unfair prejudice that substantially outweighed their probative value. *See* TEX. R. EVID. 401–403. He also made an alternative objection on the same legal grounds to a page in the records that describes B.R. observing mating dogs and thinking about Gonzalez.

## A. Standard of review

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). We will uphold the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Tillman*, 354 S.W.3d at 435; *accord Walker*, 321 S.W.3d at 22. If the trial court's evidentiary ruling is reasonably supported by the record and correct on any theory of applicable law, we will uphold the decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Tarley v. State*, 420 S.W.3d 204, 206 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

## B. Objection to the entire set of records

We begin by examining Gonzalez's objection to the entire set of Dr. Schmidt's records, determining what, if any, probative value they have, and then weighing their probative value against the danger of unfair prejudice.

### 1. Probative value

Evidence may not be admitted for consideration by the jury unless it is relevant, i.e., if it is probative of a fact of consequence to the determination of the action. TEX. R. EVID. 401–402; *Brown v. State*, 757 S.W.2d 739, 740 (Tex. Crim. App. 1988). Generally, during the guilt/innocence phase of a trial, evidence of the complainant's medical injuries, including psychological trauma, is probative only

5

of the occurrence of the harm. Thus, if the defense concedes that the complainant was harmed, evidence of the injuries generally is not admissible. *Brown*, 757 S.W.2d at 740–41.

In *Brown v. State*, the prosecution sought to admit evidence that a rape victim suffered intense psychological trauma from the assault. *Id.* at 740. The defendant denied that he was the rapist, but he did not deny that the complainant had been raped. *Id.* at 740–41. The Court of Criminal Appeals found that the evidence was not relevant to the guilt/innocence determination because it provided no information on the identity of the rapist, and only furthered the undisputed contention that the complainant was raped. *Id.*

In *Yatalese v. State*, this Court held that the rule in *Brown* allowed the State to admit evidence of a child-complainant's psychological trauma in the guilt/innocence phase of a trial for aggravated sexual assault of a child. 991 S.W.2d 509, 511 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). In that case, the defendant denied that the assault occurred. The trial court did not abuse its discretion by admitting evidence that the complainant's behavior changed drastically after the alleged assault because this evidence tended to support the assertion that the assault occurred, a disputed fact of consequence to the guilt/innocence determination. *Id.*

This case is more similar to *Yatalese* than *Brown*. In *Brown,* the defense conceded both that the victim was traumatized and that she was traumatized because of rape. Here, Gonzalez used evidence that B.R.'s mother hit B.R. to explain B.R.'s trauma. Thus, while both parties agree that B.R. was traumatized, they disagree about the cause of the trauma.

The question before us is: Are Dr. Schmidt's records merely probative of B.R.'s psychological harm or are they also probative of the injury that caused the harm? We conclude that they tend to show not only that B.R. was traumatized, but that sexual assault, not maternal abuse, caused B.R.'s trauma. B.R.'s treatment included "revisiting experiences of sexual abuse." Another part of the records state that "[B.R.] does not know why [Gonzalez] touched him in his private area . . . he remains sad because of what happened to him." The records reveal that B.R. feels embarrassed and ashamed because Gonzalez, a man he trusted, sexually abused him. They also reflect B.R.'s anger at his family for failing to protect him from Gonzalez. Dr. Schmidt specifically tailored B.R.'s therapy to "[a]cknowledge and resolve trauma associated with allegation of overt sexual behavior with mother's paramour, [Gonzalez]." Thus the records are probative of whether the assaults occurred and whether Gonzalez was the assailant.

Gonzalez argues that the records are irrelevant victim-impact evidence. He relies on *Miller-El v. State* to support this contention. 782 S.W.2d 892, 895 (Tex.

7

Crim. App. 1990). In *Miller-El*, the Court of Criminal Appeals ruled that, in a guilt/innocence phase of an attempted-murder trial, evidence of a victim's future suffering was not probative of whether an assailant intended to kill the victim. *Id.* The records in this case, however, do not concern B.R.'s future suffering, but rather document the present harm caused by the sexual assault. Regardless, the issue in this case is whether the records are probative of the *actus reus*, not of the *mens rea*, which was the issue in *Miller-El*. *Id.* Thus, *Miller-El* does not apply.

Because the records are probative of contested facts that are of consequence to the determination of Gonzalez's guilt or innocence, our holding in *Yatalese* controls; the records are relevant.

### 2.    Prejudicial effect

Relevant evidence is nonetheless inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. The mere fact that evidence adversely affects a defendant's case does not by itself create a danger of unfair prejudice. *Moreno v. State*, 409 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). "Virtually all evidence that a party offers will be prejudicial to the opponent's case, or the party would not offer it." *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007). There is no danger of unfair prejudice unless the evidence has "an undue tendency to suggest a decision on an improper basis, commonly an emotional one." *Id.*

In evaluating the relative probative value and unfairly prejudicial effect of evidence, the trial court

> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). In this case, the records do contain extraneous, irrelevant details. Some of these details may be unfairly prejudicial; one example is the record of B.R. thinking of Gonzalez while looking at two mating dogs. Further, any evidence of sexual misconduct involving children is inherently distressing.

Although the records invite some danger of unfair prejudice, this danger must substantially outweigh probative value of the evidence; otherwise, the records are admissible. *See Casey*, 215 S.W.3d at 882. This case turned on what caused B.R.'s trauma, and these records clearly point to sexual assault by Gonzalez. Thus, the evidence has a strong probative force. Although other witnesses provided substantial evidence of Gonzalez's guilt, only Dr. Schmidt diagnosed and treated B.R. for PTSD, and thus his records are uniquely probative of the cause of B.R.'s trauma. Considering the strong and unique probative force of the records, we

conclude that the trial judge's decision to admit the records was not an abuse of discretion. *See* TEX. R. EVID. 403.

## C.    Alternative objection

As discussed above, Gonzalez also objected, in the alternative, to a page of the treatment records describing B.R.'s reaction to seeing two mating dogs. Assuming, without deciding, that the trial court abused its discretion by admitting that page, Gonzalez must show that any error was not harmless. *Alexander v. State*, 740 S.W.2d 749, 765 (Tex. Crim. App. 1987). Error is harmless unless there is a "reasonable probability that [the error] might have contributed to the conviction or affected punishment." *Id.*

Gonzalez does not meet this requirement. Neither side emphasized the entry—it was never mentioned in Dr. Schmidt's testimony or in closing argument. More importantly, B.R.'s reaction to the dogs comprised only an insignificant part of the substantial evidence of Gonzalez's guilt. The other records of Dr. Schmidt indicated that B.R. was sexually traumatized by Gonzalez. Two other medical personnel testified that B.R. told them about the sexual assaults. B.R. gave testimony describing how Gonzalez would tie him up and sexually assault him. B.R.'s mother testified that B.R. had severe behavioral problems and was afraid to be alone. She also testified that she caught Gonzalez with his pants unzipped next to B.R., who had saliva on his mouth. Because the entry was not emphasized and

10

because it was such an insignificant addendum to the substantial evidence of Gonzalez's guilt, any error in its admission was harmless.

Because Gonzalez does not demonstrate reversible error with respect to either of his objections, we overrule Gonzalez's first issue.

## Ineffective Assistance of Counsel

In his second issue, Gonzalez contends that, to the extent that his lawyer failed to preserve his objections to Dr. Schmidt's records, he was denied the effective assistance of counsel. We evaluate claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Under *Strickland*, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional error, there is a reasonable probability that the result of the proceedings would have been different. *Id.* at 687–94, 104 S.Ct. at 2064–68; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

To satisfy the second prong of the *Strickland* test, defendant must show that, if the issue were preserved, there would be a reasonable probability that an appellate court would rule in his favor. *Ex Parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013). Here, both parties agree that Gonzalez's attorney properly objected to Dr. Schmidt's records. But we do not need to reach the preservation issue because, as discussed in our analysis of Gonzalez's first issue, there is no

11

reversible error in the admittance of Dr. Schmidt's records into evidence. *See id.* We overrule Gonzalez's second issue.

## Denial of Motion for Mistrial

In his third issue, Gonzalez contends that the trial court erred by denying his request for a mistrial after the improper impeachment of his son with prior misdemeanor marijuana convictions. He urges that the convictions left an "indelible mark" on the jury's evaluation of the son's credibility that was not cured by the trial court's prompt instruction.

### A.    Standard of review

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A prompt instruction from the trial judge is usually enough to cure the error and avoid the need for a mistrial. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Whether an error requires a mistrial must be determined by the particular facts of the case. *Ladd*, 3 S.W.3d at 567.

When we review an action on a motion for mistrial, "[d]eterminations of historical fact and assessment of witness credibility and believability are left almost entirely to the discretion of the trial judge, and where there is conflicting

evidence there is no abuse of discretion if the motion is overruled." *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000). An appellate court views the evidence in the light most favorable to the trial court's ruling. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). The ruling must be upheld if it is within the zone of reasonable disagreement. *Id.*

**B.     Instruction to disregard**

The witness, Gonzalez's son, testified that Gonzalez was a loving, caring parent, both as a father to the witness and as a surrogate father to B.R. On cross-examination, the State improperly impeached Gonzalez's son with several misdemeanor marijuana convictions. Gonzalez objected to the impeachment, but only after the witness admitted to the prior convictions. The trial court sustained the objection, and then instructed the jury to "disregard the last question and answer and consider it for no purpose." At the request of defense counsel, the trial court added an additional instruction: "Possession of marijuana is not a crime of moral turpitude and this is not permitted for purposes of impeachment . . . it is not allowed in determining credibility. The question should not have been asked." Gonzalez then moved for a mistrial, which the court denied.

To determine if the trial court abused its discretion by denying a mistrial motion after a prompt instruction to disregard, we use the three-factor test announced in *Mosley v. State*, 983 S.W.2d 249, 259–60 (Tex. Crim. App. 1998).

We look to three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. *Carballo v. State*, 303 S.W.3d 742, 748 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *see also Archie v. State*, 340 S.W.3d 734, 740 (Tex. Crim. App. 2011) (applying the *Mosley* factors to the denial of a motion for mistrial).

Turning to the first factor, we examine "the severity of the misconduct, or in other words, the magnitude of the prejudicial effect of the prosecutor's [misconduct]." *Archie*, 340 S.W.3d at 740. The prosecutor's impeachment was clearly improper. *See* TEX. R. EVID. 609(a). She inappropriately emphasized the inadmissible convictions by asking the witness if he had been convicted "three times" and then listing for the jury each conviction date in a second improper question. She further underscored the improper impeachment by saving it for the very end of her cross examination. These actions magnified the prejudicial effect of the error.

With respect to the second factor, "the reviewing court considers the character of the measures adopted to cure the misconduct." *Archie*, 340 S.W.3d at 741. Gonzalez contends that the judge's prompt action could not have cured the taint left in the jurors' minds by the improper impeachment. We disagree. An instruction to disregard is presumed effective unless the particular facts imply otherwise. *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988). In this

case, the trial court sustained Gonzalez's objection, and then instructed the jury to disregard twice. In its second instruction, the trial court repeated the need for the jury to disregard, explained why the law required the jury to ignore the convictions, and clearly assigned error to the State. These facts support the presumption that the instruction to disregard was effective.

In examining the third factor, "the reviewing court looks to the certainty of conviction absent the misconduct." *Archie*, 340 S.W.3d at 741. Gonzalez asserts that, absent the improper impeachment, conviction was far from certain because his entire defense was based on his credibility as established through his son. But Gonzalez's defense relied on more than just evidence of his good character; it also pointed out the lack of forensic evidence and offered the misconduct of B.R.'s mother as an alternate explanation for B.R.'s trauma. These arguments by the defense are wholly unscathed by the improper impeachment. Further, although the prosecutor should not have brought the marijuana convictions to the jury's attention, the convictions do not speak to the quality of the witness's relationship to Gonzalez, which was the substance of his testimony. Finally, as discussed in our analysis of Gonzalez's first issue, there was substantial evidence of Gonzalez's guilt. Therefore, we conclude that there was a high probability of conviction absent the improper impeachment.

Although the prosecutor magnified the prejudicial effect of the improper impeachment, the error was swiftly dealt with by the trial court, and a guilty verdict was very likely even without the misconduct. While we do not condone the prosecutor's actions, we hold that the trial court did not abuse its discretion by denying the motion for mistrial. Accordingly, we overrule Gonzalez's third issue.

## Conclusion

We affirm the judgment of the trial court.


Harvey Brown
Justice


Panel consists of Justices Massengale, Brown, and Huddle.

Publish. TEX. R. APP. P. 47.2(b).