**Affirmed and Memorandum Opinion filed November 5, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00702-CR

**KENNETH RAY MAYS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 17CR0754**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Kenneth Ray Mays of continuous sexual abuse of a child and assessed punishment at thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant challenges his conviction, asserting that his trial counsel was ineffective in two respects: (1) by failing to object to alleged victim impact testimony during the guilt-innocence phase of trial; and (2) by failing to cross-examine the child victim. Because the record

does not support appellant's assertions of ineffective assistance, we affirm the trial court's judgment.

## Background

A grand jury indicted appellant for continuous sexual abuse of a child under fourteen, D.W., occurring from 2007 through 2011. Appellant is D.W.'s brother-in-law. Appellant has been married to D.W.'s oldest sister, Latoya, for most of D.W.'s life. Latoya's son, K.S., is appellant's stepson. K.S. is the same age as D.W., and they were frequently together as young children. According to D.W., appellant taught her and K.S. how to do "sexual stuff." D.W. described an incident that occurred when she was five or six years old during which appellant put her and K.S. on top of each other and told them to "do it." Appellant told the children to take their bottoms off and explained to them "how to hump." In another incident, appellant made K.S. and D.W. "hump" each other.

D.W. recounted another time when she was alone in the house with appellant, and appellant touched her breasts and "private parts" with her pants down. D.W. also described an occasion where appellant taught her how to get on top of him and "jump" up and down. During this incident, appellant then got on top of D.W. and moved up and down. D.W. described other incidents when neither she nor appellant had clothes on, and D.W. stated that appellant "penetrated" her. D.W. also described an incident during which appellant "took turns" with K.S. and D.W.; one of the children was on the bed, while the other was in a corner facing away. D.W. saw K.S. lying down when it was his "turn." When the children switched, appellant and D.W. "humped."

Several years later, D.W. disclosed some of the abuse to her mother, Tina. A few months later, she revealed more of the abuse to one of her sisters. Because of what D.W. revealed, Tina took her to a pediatrician and reported the abuse to the

2

LaMarque Police Department ("LMPD").  After the report, the LMPD investigated the allegations.  As part of the LMPD investigation, appellant provided a voluntary statement.  He denied all of D.W.'s sexual allegations.

D.W. spoke to a forensic interviewer at the Children's Assessment Center. During the interview, D.W. described numerous instances of sexual abuse.  D.W. reported that the incidents began when she was around age five and included appellant's sexual touching, appellant's teaching D.W. and K.S. to do sexual things, appellant's penetration of D.W.'s vagina with his penis, and appellant's saying sexually suggestive things.  D.W. also underwent a sexual assault exam, but the exam revealed nothing remarkable.

After D.W. disclosed the abuse, her behavior changed; according to Tina, D.W. became very emotional, sad, and depressed, as well as expressing suicidal thoughts.  Tina took D.W. to a therapist to help her deal with the sexual abuse.  D.W. revealed to her therapist, Shrabhi Jagdis, that she was having nightmares, had trouble sleeping, and had trouble at school.  Tina told Jagdis that D.W. was anxious, depressed, did not like sleeping alone, and experienced suicidal thoughts.  During the guilt-innocence phase of appellant's trial, Jagdis testified that D.W. suffers from post-traumatic stress disorder ("PTSD").  Jagdis also detailed the treatment plan she developed with D.W., which included helping D.W. develop skills and tools by talking about the abuse so that D.W.'s symptoms would be reduced over time. Although Jagdis acknowledged that D.W.'s behavior could be consistent with something other than PTSD, Jagdis stated she believed D.W. suffered from PTSD due to sexual abuse trauma.

D.W.'s sisters did not want to talk to the police or the district attorney, nor did they want to testify at trial.  D.W. knew her sisters did not support her.  In fact, Latoya did not leave appellant after D.W. revealed the ongoing abuse.  When Latoya

testified at trial, she was still married to appellant. Additionally, K.S. testified that he loves appellant and did not remember anything sexual happening; he denied that appellant made him and D.W. touch each other.

After hearing all the evidence, a jury convicted appellant of continuous sexual abuse of a child and sentenced him to thirty years' confinement. Appellant did not file a motion for new trial following his conviction. This appeal timely followed.

**Analysis**

**A. Ineffective Assistance of Counsel**

We examine claims of ineffective assistance of counsel under the familiar two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Robison v. State*, 461 S.W.3d 194, 202 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Under *Strickland*, the defendant must prove that his trial counsel's representation was deficient, and that the deficient performance was so serious that it deprived him of a fair trial. *Strickland*, 466 U.S. at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. But a deficient performance will deprive the defendant of a fair trial only if it prejudices the defense. *Id.* at 691-92. To demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697.

Our review of trial counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable professional assistance. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007); *Donald v. State*, 543 S.W.3d 466, 477 (Tex. App.—Houston [14th Dist.] 2018, no

4

pet.) (op. on reh'g). If counsel's reasons for his or her conduct do not appear in the record and there exists at least the possibility that the conduct could have been grounded in legitimate trial strategy, we defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal. *See Garza*, 213 S.W.3d at 348. The Court of Criminal Appeals has also stated that if counsel has not had an opportunity to explain the challenged actions, we may not find deficient performance unless the conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). In the majority of cases, the record on direct appeal is simply undeveloped and insufficient to permit a reviewing court to fairly evaluate the merits of an ineffective assistance of counsel claim. *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Robison*, 461 S.W.3d at 203.

With this framework in mind, we turn to each of appellant's contentions.

## B. Failure to Object to Testimony

In his first issue, appellant argues that his trial counsel was ineffective for not objecting to Jagdis's statements during the guilt-innocence phase of trial that D.W. suffers from PTSD. Appellant asserts that this testimony was victim impact testimony inappropriate for guilt-innocence. *See Love v. State*, 199 S.W.3d 447, 456-57 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("Victim impact testimony is irrelevant at the guilt-innocence phase of trial because it does not tend to make more or less probable the existence of any fact of consequence with respect to guilt or innocence."). We disagree that counsel was ineffective for failing to object to this testimony.

To show ineffective assistance of counsel for the failure to object during trial, an appellant must show that the trial judge would have committed error in overruling

5

the objection the appellant says counsel should have asserted. *Straight v. State*, 515 S.W.3d 553, 565 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (citing *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004)). The type of victim impact testimony at issue in today's case generally is admissible during a child sex assault case because such testimony tends "to make more or less probable a fact of consequence at the guilt stage; that is, whether appellant committed the crimes at all." *See Longoria v. State*, 148 S.W.3d 657, 659-60 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *see also Gonzalez v. State*, 455 S.W.3d 198, 203-04 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (evidence of child's PTSD admissible during guilt-innocence phase when source of trauma was disputed). Because Jagdis's testimony was admissible and the trial court would not have abused its discretion in overruling the objection appellant contends counsel should have asserted, we cannot say that trial counsel's failure to object fell below an objective standard of reasonableness. *See Longoria*, 148 S.W.3d at 659-60.

Further, our record is silent regarding why appellant's trial counsel failed to object to Jagdis's testimony. Appellant did not file a motion for new trial asserting this complaint, nor did a hearing occur at which counsel was afforded an opportunity to explain the reasoning behind the decision not to object. Our record is thus insufficient to overcome the presumption that counsel's actions were part of a strategic plan. *See Tong v. State*, 25 S.W.3d 707, 714 (Tex. Crim. App. 2000) (no ineffective assistance on direct appeal when counsel failed to object to improper victim impact testimony of an extraneous offense when record was silent as to counsel's motivations); *see also Brown v. State*, No. 14-15-00795-CR, 2017 WL 2258251, at *13 (Tex. App.—Houston [14th Dist.] May 23, 2017, no pet.) (mem. op., not designated for publication) (where record was silent as to why appellant's counsel failed to object to victim impact testimony during guilt-innocence phase of

6

trial, presumption that counsel's actions were part of a strategic plan was not overcome); *Montez v. State*, No. 14-05-00182-CR, 2006 WL 916437, at *6-7 (Tex. App.—Houston [14th Dist.] Apr. 6, 2006, pet. ref'd) (mem. op., not designated for publication) (same).

In sum, appellant has not demonstrated that his counsel's failure to object to Jagdis's testimony amounted to ineffective assistance of counsel. We overrule his first issue.

## C.    Failure to Cross-Examine Child Victim

In his second issue, appellant urges that his trial counsel was ineffective because he failed to cross-examine D.W. during the guilt-innocence phase of trial. He contends that trial counsel should have attacked D.W.'s credibility, her delayed outcry, and her changing story. However, we conclude that appellant has failed to overcome the strong presumption that his counsel's decision to refrain from cross-examining the child victim in this case was strategic.

"Cross-examination is inherently risky, and a decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial." *Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005). "Furthermore, cross-examination is an art, not a science, and it cannot be adequately judged in hindsight." *Id.* Indeed, ineffective cross-examination may bolster, rather than impeach, a witness's credibility. *See Jones v. State*, 500 S.W.3d 106, 115 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Without a strong basis on which to cross-examine, "'it can be more effective to refrain from cross-examining a damaging witness to minimize the impact of [her] testimony.'" *Id.* (quoting *Dannhaus v. State*, 928 S.W.2d 81, 88 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd)).

In today's case, trial counsel reasonably could have determined that cross-examination of the child victim could have caused more damage than benefit. *Id.*; *see also Navarro v. State*, 154 S.W.3d 795, 799 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) ("Given an emotional and tragic case such as this, it is entirely reasonable or foreseeable that a defense attorney would limit his cross-examination out of fear of alienating a jury or coming across as too aggressive."); *Romero v. State*, No. 14-07-00657-CR, 2008 WL 5244890, at *4 (Tex. App.—Houston [14th Dist.] Dec. 18, 2008, no pet.) (mem. op., not designated for publication) ("[T]here is a possibility that appellant's trial counsel thought she might alienate the jury if she cross-examined the brother and the mother of a twelve-year-old victim of sexual assault."). Trial counsel reasonably could have foregone cross-examination of D.W. based on concerns about alienating the jury or appearing too aggressive. Without a more developed record explaining counsel's strategy, appellant has not overcome the strong presumption that trial counsel's decisions regarding cross-examination fall within the wide range of reasonable professional assistance. *E.g.*, *Jones*, 500 S.W.3d at 115 (citing *Ex parte McFarland*, 163 S.W.3d at 755-57).

On this record, appellant has not shown his trial counsel was ineffective for failing to cross-examine D.W.

## Conclusion

Having overruled appellant's two issues, we affirm the trial court' judgment.


/s/      Kevin Jewell
         Justice

Panel consists of Justices Jewell, Bourliot, and Zimmerer.

Do Not Publish — TEX. R. APP. P. 47.2(b).