

# IN THE
# TENTH COURT OF APPEALS

─────────────

### No. 10-19-00048-CR

─────────────

**ELWOOD HOOVER,**

                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                        **Appellee**

─────────────

### From the 21st District Court
### Burleson County, Texas
### Trial Court No. 15,443

─────────────

## MEMORANDUM OPINION

─────────────

A jury convicted Appellant Elwood Hoover of possession of a controlled substance, methamphetamine, in an amount of one gram or more but less than four grams. The jury then assessed Hoover's punishment, enhanced by prior felony convictions, at sixty years' imprisonment. Hoover appeals. In two issues, Hoover

contends: (1) the evidence is insufficient to support his conviction, and (2) the trial court erred in denying his motion for mistrial. We will affirm.

## Sufficiency of the Evidence

In his first issue, Hoover challenges the sufficiency of the evidence to support his conviction, arguing that no rational trier of fact could have found beyond a reasonable doubt that he knowingly possessed the methamphetamine.

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732–33 (Tex. Crim. App. 2018).

Texas Health and Safety Code subsection 481.115(a) provides that a person commits an offense if "the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1." TEX. HEALTH & SAFETY CODE ANN. § 481.115(a). Methamphetamine is listed as a Penalty Group 1 controlled substance. *Id.* § 481.102(6). To prove unlawful possession of a controlled substance, the State must establish that: (1) the accused exercised care, control, or management over the substance, and (2) the accused knew the substance was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015); *see* TEX. PENAL CODE ANN. § 1.07(a)(39).

"'When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.'" *Poindexter*, 153 S.W.3d at 406 (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981)). However, presence or proximity, when combined with other evidence, either direct or circumstantial (*i.e.*, links), may well be sufficient to establish actual care, custody, or control over the contraband beyond a reasonable doubt. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). Evidence that links the defendant to the controlled substance suffices for proof that he possessed it knowingly. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

Factors that may be helpful to consider when determining whether the accused was sufficiently linked to the contraband include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016); *accord Evans*, 202 S.W.3d at 162 n.12. Texas courts have recognized that this is a nonexclusive list of factors that may be sufficient, either individually or in combination, to establish a defendant's possession of contraband. *Evans*, 202 S.W.3d at 162 n.12. "It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial." *Id*. at 162.

The evidence presented at trial included the testimony of Burleson County Sheriff's Deputy Chance Schoenthal, as well as his in-car video documenting his encounter with Hoover. The evidence established that Deputy Schoenthal was dispatched on December 2, 2017, to conduct a welfare check after the sheriff's office received a call about a suspicious vehicle. Deputy Schoenthal testified that upon arrival at the scene, he observed a red pickup truck parked near the roadway. When he approached the vehicle, Deputy Schoenthal found Hoover asleep inside the truck on the driver's side.

Deputy Schoenthal testified that he woke Hoover up and then identified him by his driver's license. After providing Hoover's driver's license information and the vehicle's registration to dispatch, Deputy Schoenthal discovered that a third party, a person whom Deputy Schoenthal had previously arrested for possession of a controlled substance, was the registered owner of the truck, not Hoover. Hoover explained to

Deputy Schoenthal that he had borrowed the truck and had come there to stay the night due to problems at home.

Deputy Schoenthal testified that he then asked Hoover if he could search the truck, and Hoover consented. Deputy Schoenthal described the truck as "relatively new" and "very clean." The truck contained only a few personal items. In the truck's center console, Deputy Schoenthal found drinks and cigarettes that Hoover admitted belonged to him. Deputy Schoenthal also found a blue wallet in the open cubbyhole dash compartment on the driver's side near the gear shift lever and behind the steering column. Inside the blue wallet were two $20 bills and a clear plastic baggie containing a white crystalline substance that Deputy Schoenthal believed to be methamphetamine. Deputy Schoenthal testified that Hoover denied ownership of the blue wallet itself and the substance it contained. Hoover had also earlier provided his driver's license from a separate, "personal wallet," not from the blue wallet. But Hoover did initially claim ownership of the money found in the blue wallet.

Deputy Schoenthal testified that he arrested Hoover at that point and searched his person. Deputy Schoenthal found another clear baggie in Hoover's left front pocket. The baggie appeared identical to the one found in the blue wallet, and Deputy Schoenthal believed it also contained trace amounts of a white crystalline substance. Deputy Schoenthal testified that after being arrested, Hoover asked Deputy Schoenthal if he could just throw the baggie away and if they could just go home.

The clear baggie found in the blue wallet was submitted to the Texas Department of Public Safety Crime Laboratory for analysis. A forensic scientist testified that he analyzed the substance in the baggie and determined it was methamphetamine weighing 3.44 grams. Deputy Schoenthal testified that the baggie found on Hoover's person was not sent for testing.

Hoover argues that the quantity and quality of links between him and the contraband overwhelmingly suggest that the State failed to prove his knowing possession of the contraband. Hoover first asserts that of the fourteen nonexclusive factors, only two support the State. The absence of various links, however, does not constitute evidence of innocence to be weighed against the links present. *Williams v. State*, 313 S.W.3d 393, 398 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Instead, we look at the logical force of all the evidence rather than the number of links present in a given case. *Id*.

Hoover goes on to argue that factor number fourteen—indicating a consciousness of guilt—clearly favors the defense and is of much greater importance than the rest of the factors because it points directly to the knowledge requirement. The State, on the other hand, argues that the most critical link or connection between Hoover and the methamphetamine is the simple fact that he was sitting within arm's length of the blue wallet. Hoover was not merely in the truck with the drugs hidden away; the wallet was right in front of him.

In *Grant v. State*, the appellant contended that the evidence was insufficient to prove knowing possession of marijuana. 989 S.W.2d 428, 432 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The *Grant* court first held that because the appellant was the driver and sole occupant of the vehicle, as here, the appellant exercised actual care, custody, control, or management over the contraband found within the vehicle, satisfying the first element of the offense of possession. *See id.* at 433. The *Grant* court then explained that knowledge of the presence of contraband, *i.e.*, the second element of the offense of possession, may also be inferred from control over the vehicle in which the contraband is concealed. *Id.* But the *Grant* court cautioned that when the contraband is found in hidden compartments of a vehicle, reliance should not be placed solely on control of the vehicle to show knowledge. *Id.* at 434.

Here, although the blue wallet was not found in a hidden compartment of the vehicle, the contraband was effectively hidden from Hoover inside the blue wallet. But, in addition to Hoover being the driver, being the sole occupant of the vehicle, and being within arm's length of the blue wallet, other factors support the jury's verdict.

Hoover initially claimed ownership of the money found in the blue wallet with the contraband. Additionally, a clear baggie that appeared identical to the one containing the contraband was found in Hoover's pocket, and it was also covered in trace amounts of a white crystalline substance, which, while not tested, appeared visually similar to the methamphetamine found in the baggie in the blue wallet.

Furthermore, after Deputy Schoenthal arrested Hoover and discovered the clear baggie on his person, Hoover asked Deputy Schoenthal if he could throw the baggie away and if they could just go home. The jury could have interpreted this as conduct by Hoover that indicated a consciousness of guilt. *See id.* (noting that defendant's conduct may be used to infer knowledge that matter possessed was contraband).

Viewing the evidence in the light most favorable to the jury's verdict, we therefore conclude that the jury could have rationally found beyond a reasonable doubt all the elements of the offense of possession of a controlled substance, methamphetamine, in an amount of one gram or more but less than four grams. Accordingly, Hoover's first issue is overruled.

**Motion for Mistrial**

In his second issue, Hoover contends that the trial court erred in "denying [his] motion for mistrial based upon the prosecutor's prohibited comments on [his] failure to testify at trial."

This issue concerns the following exchange that took place during the State's closing argument during the guilt/innocence phase of trial:

> [PROSECUTOR]: Now, on December 2nd, 2017, Chance Schoenthal happened to come across this vehicle, a vehicle for which the Defendant, Elwood Hoover, had the sole care, custody, control, and management of. Inside that vehicle were several items that clearly belonged to the Defendant. Not only did he have care, custody, and control over them, and as such possessed them, but he was clearly the owner of them. He said so himself. These cigarettes, this money, which happened to be right next to

this wallet which contains something that looked suspiciously like an illegal controlled substance, methamphetamine.

Now, I'd like to remind the jury, you are the ultimate determiners of fact. It is up to you to decide the credibility of each and every witness, the weight of all the testimony. So ask yourselves in that capacity, you have to decide who has the incentive to lie. Who might lie? Who did lie?

[DEFENSE COUNSEL]: Objection, Your Honor. May we approach?

THE COURT: You may.

(At the Bench, on the record.)

[DEFENSE COUNSEL]: I'm going to object to testimony -- this argument. My client didn't testify at all. He's going to --

[PROSECUTOR]: His client -- but he is on the video.

[DEFENSE COUNSEL]: He's going into his election not to testify and I object to this and I move for a mistrial.

THE COURT: I'm going to ask him to move along. I'm not going to grant the mistrial.

(End of Bench discussion.)

[PROSECUTOR]: When confronted you heard the testimony from Deputy Schoenthal. The Defendant asked if he could throw that stuff out. Well, guess what? Of course he did. It's because he knew that that was his stuff and he was in trouble for having it. You'll notice that it says knowingly possesses a controlled substance. Obviously he knew that was his controlled substance because he wanted it thrown out and he didn't want to get in trouble for it.

Here, Hoover moved for a mistrial based on the State's alleged improper argument, and the trial court effectively denied his motion. Hoover has therefore preserved his complaint about the denial of his motion for mistrial for our review. But

Hoover further complains in the substance of this issue in his brief that the alleged error was compounded by the trial court's failure to give an instruction to disregard—an instruction that Hoover never requested.

## A.    Preservation

We cannot address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).  To have preserved a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that stated the grounds for the desired ruling if they were not apparent from the context of the request, objection, or motion.  TEX. R. APP. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015).  Further, the trial court must have ruled on the request, objection, or motion, or the complaining party must have objected to the trial court's refusal to rule.  TEX. R. APP. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013).

In *Young v. State*, the Court of Criminal Appeals explained that while a defendant does not completely forfeit review when he moves for a mistrial without first requesting an instruction to disregard, relief on his appellate issue is appropriate only when the error could not have been "cured" by an instruction to disregard.  137 S.W.3d 65, 70 (Tex. Crim. App. 2004).  In other words, an event that could have been cured by instruction to the jury will not lead an appellate court to reverse a judgment on an appeal by the party who did not request the lesser remedy in the trial court.  *Id*.  Accordingly, as here, when a

party's first action is to move for mistrial, the scope of our appellate review is limited to whether the trial court erred in not taking the most serious action of ending the trial. *Id.*

B.     Merits

A denial of a motion for mistrial is reviewed for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). The trial court's ruling must therefore be upheld if it falls within the zone of reasonable disagreement. *Id.*

Permissible jury argument falls into one of four general categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to opposing counsel's argument; or (4) pleas for law enforcement. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). Prosecutorial argument that refers to a defendant's failure to testify violates the defendant's constitutional and statutory right against compelled self-incrimination. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011); *see* U.S. CONST. amend. V; TEX. CONST. art. I, § 10; TEX. CODE CRIM PROC. ANN. art. 38.08.

The reviewing court must consider the prosecutor's statement from the jury's standpoint, and the reference to the defendant's failure to testify must be clear. *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). The language must be more than an implied or indirect allusion to the failure of the accused to testify. *Randolph* 353 S.W.3d at 891.

> The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. In applying this

standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character.

*Id*. (footnotes and citations omitted).

Hoover complains that the following statement by the prosecutor was an impermissible comment on his failure to testify: "So ask yourselves in that capacity, you have to decide who has the incentive to lie. Who might lie? Who did lie?" The State responds that the prosecutor's comment did not reference Hoover's failure to testify and was instead a reasonable deduction from the evidence. The State notes that Deputy Schoenthal's in-car video of his encounter with Hoover was admitted into evidence and that the video footage shows Deputy Schoenthal finding the methamphetamine in the truck and Hoover stating that the methamphetamine was not his.

It appears that, when examined in context, the complained-of statement made by the prosecutor during the State's argument was referring to Hoover's statements on Deputy Schoenthal's in-car video. Accordingly, we conclude that the jury argument was not an impermissible comment on Hoover's failure to testify. *See, e.g., Ortiz v. State*, 144 S.W.3d 225, 235 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

Furthermore, when a party requesting a mistrial does not first seek a lesser remedy—usually a judge's instruction to the jury to disregard what they heard—reversal is inappropriate if any prejudice could have been cured by a less drastic alternative. *See Young*, 137 S.W.3d at 69–70. An instruction to disregard usually cures any prejudice. *Gonzalez v. State*, 455 S.W.3d 198, 206 (Tex. App.—Houston [14th Dist.] 2014, pet, ref'd).

There is an appellate presumption that an instruction to disregard will be obeyed. *See Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987). An instruction fails to cure prejudice when the instruction fails to "leave the jury in an acceptable state to continue the trial." *Young*, 137 S.W.3d at 69.

We conclude that to the extent that the comments were improper, an instruction to disregard would have sufficed. Therefore, the trial court did not abuse its discretion in denying Hoover's motion for mistrial. Hoover's second issue is overruled.

Having overruled both of Hoover's issues, we affirm the trial court's judgment.

MATT JOHNSON
Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
Affirmed
Opinion delivered and filed October 6, 2021
Do not publish
[CRPM]

