

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00161-CR

Brandon Joshua **VIGIL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 454th Judicial District Court, Medina County, Texas
Trial Court No. 20-06-13648-CR
Honorable Daniel J. Kindred, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice
Concurring Opinion by: Beth Watkins, Justice, joined by Patricia O. Alvarez, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
        Patricia O. Alvarez, Justice
        Beth Watkins, Justice

Delivered and Filed: June 7, 2023

AFFIRMED

A jury convicted appellant Brandon Vigil of continuous sexual abuse of a child, a first-degree felony, and the trial court assessed punishment at forty years' confinement in the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 21.02. In three issues, Vigil complains that the trial court abused its discretion in overruling his (1) hearsay objection to therapy records; (2) objection to the State's designation of a forensic nurse examiner as an outcry witness; and (3) request to conduct a voir dire examination of a law enforcement officer. We affirm.

**I. BACKGROUND**

At trial, the jury considered the testimony of, among others, B.V., Vigil's daughter; B.V.'s mother (hereinafter "Mother"); Medina County Sheriff's Deputy Dustin Reyes; Kara Lands, a forensic interviewer at the Bluebonnet Children's Advocacy Center (hereinafter "BCAC"); and Pennie Robertson, a clinical social worker at BCAC.

When B.V. was approximately twelve or thirteen years old, her Mother noticed cuts on her arms. B.V. testified that she was angry and sad because she "never had the courage to say anything" about Vigil's conduct, and these feelings caused B.V. to cut herself. Mother asked why she was cutting herself, and B.V. responded, "my dad." After Mother prodded, B.V. "told her all the things that [Vigil] had done." Mother informed law enforcement, and B.V. spoke with a "lady" at BCAC. B.V. told the lady "mostly . . . pretty much the same" things that she had told her mother, but "there were a few things [that B.V.] told [the lady] that [she] didn't tell" Mother. On cross examination by Vigil's counsel, B.V. was asked:

| | |
|---|---|
| VIGIL'S COUNSEL: | Did you give [Mother] details like you did to the lady — to the people at [BCAC]? |
| B.V.: | No. |
| VIGIL'S COUNSEL: | You just told generally what happened, right? |
| B.V.: | Yes. |

When Mother prodded B.V. for details, she responded with "very vague" answers.

Mother testified that she asked B.V. what was wrong upon noticing cuts on B.V.'s arms. B.V. then burst into tears and told Mother: "My dad is molesting me. My dad has touched me. My dad has been doing things to me." Mother reported B.V.'s allegations to the Medina County Sheriff's Office, and she was placed in contact with Deputy Reyes. When asked by the State, "did [B.V.] ever give you any specific details or just vague statements," Mother answered:

Yes[, to] both. She did give me specific details after. [sic] Initially, she did not want to disclose things with me. She was very, again very reserved with herself, and once she talked with Deputy Reyes and all that came out with him, then weeks and months went by and she would give me bits and pieces of what happened to her and I never — I never went and asked her anything. I never told her let's sit down and let's talk about it . . . .

Deputy Reyes testified that he spoke with Mother over the telephone, and he advised Mother to refrain from speaking to B.V. about Vigil's contact. Deputy Reyes then made an appointment for B.V. to undergo a forensic interview at BCAC. He, however, did not arrange for a SANE examination.[1] Deputy Reyes explained that he did not request a SANE examination because, according to B.V., the last time Vigil had sexual contact with her was approximately a year earlier. At this point in Deputy Reyes's testimony, Vigil's counsel sought to conduct a voir dire examination "about his expertise in what he's testifying about." The State responded that Deputy Reyes was providing "just general information known by law enforcement in his training." The trial court overruled Vigil's objection and noted that his counsel would have an opportunity to cross examine Deputy Reyes.

As the State began questioning Lands, Vigil excepted to the State's request to designate Lands as an outcry witness under Article 38.072 of the Texas Code of Criminal Procedure. On voir examination by the State, Lands testified that, on July 3, 2019, she conducted a forensic interview of B.V. Lands recalled that B.V. told her about four instances when Vigil initiated sexual contact with her. First, B.V. described to Lands an incident that occurred when she was approximately five or six years old. After Vigil isolated B.V. in his bedroom, he undressed B.V., and he "touched her private part with his private part." Second, B.V. told Lands about a time when Vigil took B.V. in a bathroom at his mother's house, masturbated, and made her swallow his ejaculate from a spoon. Third, B.V. told Lands that Vigil made her masturbate him in a car while

---

[1] A SANE examination is an exam conducted by a sexual assault nurse examiner.

parked outside an apartment complex. Fourth, B.V. described an incident where, when she was approximately six or seven years old, Vigil performed oral sex on her. On cross examination by Vigil's counsel, Lands testified that, before any forensic interview begins, she is informed whether the allegations are sexual or physical in nature. In this case, Deputy Reyes conveyed that information to Lands. When pressed by Vigil's counsel, Lands could not remember what Deputy Reyes told her about the allegations before she interviewed B.V. The trial court overruled Vigil's objection.

After the forensic interview, B.V. received therapy by Pennie Robertson at BCAC. Robertson testified that she provided B.V. with Trauma Focus Cognitive Behavioral Therapy. During B.V.'s therapy sessions, B.V. wrote a narrative about Vigil's sexual contact with her, and she shared the story with Robertson. The narrative writing process, according to Robertson, helps improve a patient's coping skills. It was through B.V.'s narrative that Robertson learned the details of Vigil's sexual contact with B.V. Robertson maintained records of her therapy sessions with B.V. These records contain Robertson's observations about B.V.'s wellbeing and the narrative that B.V. recounted to her.

Ultimately, the jury convicted Vigil of continuous sexual abuse of a child, and the trial court assessed punishment at forty years' confinement in the Texas Department of Criminal Justice. Vigil timely appealed.

## II. DISCUSSION

### A.    Standard of Review

Vigil's first and second issues are subject to an abuse-of-discretion standard of review. *See Castillo v. State*, 71 S.W.3d 812, 818–19 (Tex. App.—Amarillo 2002, pet. ref'd) (recognizing that abuse of discretion standard of review applied to a complaint that the offering party failed to lay a proper predicate for an autopsy report to qualify for the business-record exception to the hearsay

rule); *Thomas v. State*, 309 S.W.3d 576, 578 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) ("We review a trial court's designation of an outcry witness under an abuse-of-discretion standard." (citing *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990))).

## B.     Therapy Records

While examining B.V., the State asked her to review notes that Robertson had made over the course of several therapy sessions.  B.V. acknowledged that the notes pertained to therapy Robertson provided to her.  The State then offered Robertson's therapy records for admission.  Vigil objected to them on hearsay grounds.  The State countered by arguing that they were authenticated with a business records affidavit and Vigil's counsel had received adequate pretrial notice of the State's intent to offer them as evidence.  The trial court overruled Vigil's hearsay objection.

Vigil argues in his first issue that "the statements contained within [Robertson's therapy records] are hearsay and do not qualify as a business record."  He references *Garcia v. State*, 126 S.W.3d 921, 925–28 (Tex. Crim. App. 2004), for its proposition that "[w]hen a business receives information from a person who is outside the business and who has no business duty to report or to report accurately, those statements are not covered by the business records exception."  *Id*. at 926.  The court in *Garcia* described the appellant's trial court objection as a "hearsay within hearsay" objection.  *Id*. at 925 n.1 ("The only objection that is sufficiently specific under [Texas Rule of Evidence] 103(a) is that the statements quoted within the business records are themselves hearsay.").

We read Vigil's appellate argument as a "hearsay within hearsay" argument similar to the one he references in *Garcia*.  However, unlike the appellant in *Garcia*, Vigil did not lodge a "hearsay within hearsay" objection in the trial court.  Therefore, Vigil's complaint on appeal does not comport with his complaint at trial, and it is waived.  *See e.g., Schmidt v. State*, 612 S.W.3d

359, 370 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (citing *Ponce v. State*, 89 S.W.3d 110, 120 n.8 (Tex. App.—Corpus Christi 2002, no pet.); *Santschi v. State*, No. 14-15-00771-CR, 2017 WL 3090001, at *7 (Tex. App.—Houston [14th Dist.] Jul. 20, 2017, no pet.) (mem. op., not designated for publication)).  Moreover, at trial and again on appeal, Vigil fails to specifically identify the portion of Robertson's therapy records that he contends are inadmissible.  This situation militates in favor of overruling Vigil's first issue because Robertson's therapy records contain a mixture of her observations of B.V.'s emotional state and statements that B.V. made to Robertson.  *See Schmidt*, 612 S.W.3d at 370 ("If the complaint about admissibility fails to refer to the objectionable portions of the evidence, then the trial court may safely admit or exclude it all.").

Alternatively, assuming, without deciding, that the trial court abused its discretion in overruling Vigil's objection, such an error in this case would be harmless.  *See Gonzales v. State*, 455 S.W.3d 198, 205 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (finding admission of a page of the complainant's psychotherapy records to be harmless).  Vigil highlights that, during the jury's deliberation, it sought additional copies of Robertson's therapy records.  He argues that such a request coupled with the State's focus on B.V.'s credibility and what she "had to endure" is evidence that the State emphasized Robertson's therapy records.  However, Vigil fails to direct us to any portion of the State's opening and closing arguments wherein it specifically emphasized Robertson's therapy records.  Moreover, B.V. provided firsthand testimony about Vigil's sexual contact with her, and Robertson testified about the narrative process that she employed during her therapy sessions with B.V.  Thus, B.V.'s narrative, contained in Robertson's therapy records, is cumulative of B.V.'s unobjected testimony.  *See Lamerand v. State*, 540 S.W.3d 252, 257 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (harmless error from the admission of a medical report containing inadmissible hearsay from the child complainant because the doctor testified about the same statements without objection).

We overrule Vigil's first issue.

## C.      Designation of Outcry Witness

In Vigil's second issue, he complains that the trial court abused its discretion by overruling his objection to the designation of Lands as the outcry witness. Vigil highlights B.V.'s testimony that she told the "lady" at BCAC "mostly . . . pretty much the same" things that she had told her mother, but "there were a few things [that B.V.] told [the lady] that [she] didn't tell" Mother. The State responds by arguing that B.V.'s remarks to Mother were "merely general allusions to potential issues regarding the conduct of [Vigil] towards [B.V.]"

"Article 38.072 is a rule of admissibility of hearsay evidence," allowing for the admission of a child victim's out-of-court statements describing the alleged sexual or physical abuse under specified, enumerated circumstances. *Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005) (discussing the limitations of article 38.072); *see* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a). Article 38.072 only applies to statements that (1) "describe . . . the alleged offense," (2) "were made by the child . . . against whom the charged offense . . . was allegedly committed," and (3) "were made to the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense." TEX. CODE CRIM. PROC. ANN art. 38.072, § 2(a); *see Sanchez v. State*, 354 S.W.3d 476, 484–85 (Tex. Crim. App. 2011). The Texas Court of Criminal Appeals has explained that, under article 38.072, the proper outcry witness is the first adult person to whom the child describes the offense in some discernible manner beyond general insinuations that sexual abuse occurred. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011).

In announcing its ruling, the trial court stated:

I do believe the testimony did say that the child made her mother aware that something happened but as to details, I mean, I think the mother was clear she didn't

get details until quite some time. So I'll overrule your objection and I'll allow Ms. Lands to testify as the outcry witness.

We conclude that the trial court, in considering the testimony before it at the time it overruled Vigil's objection, did not abuse its discretion. As the trial court stated, it considered B.V.'s testimony that Vigil highlights, B.V.'s later elaboration that she told the "lady" at BCAC more details, and Mother's testimony that B.V. initially shared only "bits and pieces" of what B.V. recalled had happened. *See Thomas v. State*, 309 S.W.3d 576, 577–79 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (concluding that a child victim's statements to her mother that appellant used his hands to touch her was insufficient to designate mother as outcry witness because it was a "general allusion" that failed to describe the alleged offense in a discernible manner); *Reyes v. State*, 274 S.W.3d 724, 728–29 (Tex. App.—San Antonio 2008, pet. ref'd) (providing that, although the child first acknowledged to social worker she had been abused, the trial court did not err when it concluded that such general acknowledgment did not provide sufficient detail).

We overrule Vigil's second issue.

## D.      Voir Dire of Deputy Reyes

In Vigil's third issue, he complains that Deputy Reyes testified as an expert and the trial court erred in overruling his counsel's request to conduct a voir dire examination of Deputy Reyes. Vigil further complains that his trial counsel was deprived of the "underlying facts or data" relied on by Deputy Reyes and that the lack of a voir dire examination allowed Deputy Reyes, as an expert, to "provide damaging and inadmissible testimony."

Texas Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

TEX. R. EVID. 702.  Vigil neither explains how Deputy Reyes's investigative decision to forgo subjecting B.V. to a SANE examination constitutes an expert "opinion" nor references any legal authority that supports such a proposition.  Additionally, Vigil does not specify what "damaging and inadmissible testimony" Deputy Reyes provided.  I conclude that Vigil's third issue is inadequately briefed, and therefore, waived.  *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *see also Wood v. State*, 18 S.W.3d 642, 650–51 (Tex. Crim. App. 2000) (finding issue waived when appellant failed to adequately develop his argument).

### III. CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH